## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**HEIDI McMONIGAL**

     **Plaintiff,**

  **vs.**           **Civil Action 2:11-CV-156**
                 **Judge Smith**
                **Magistrate Judge King**

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

     **Defendant.**

## REPORT AND RECOMMENDATION

   This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 16, and the Commissioner's *Memorandum in Opposition*, Doc. No. 24.

   Plaintiff Heidi McMonigal filed her application for benefits in May 2006, alleging that she has been disabled since February 18, 2005 as a result of depression and problems with her neck, lower back and knees. *Page ID#* 158. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

   A hearing was held on October 30, 2008, at which plaintiff, represented by counsel, appeared and testified, as did Steven S. Rosenthal, who testified as a vocational expert. In a decision dated January 6, 2009, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. That decision became the final decision of the Commissioner of Social Security when the Appeals Council denied review on March 18, 2011.

Plaintiff was 37 years old at the time the administrative law judge issued his decision. *Page ID##* 57, 144. She has a high school education, *Page ID#* 165, and prior relevant work experience as a home health attendant and service station attendant and manager. *Page ID##* 147-155, 159.

Plaintiff alleges and the administrative law judge found that plaintiff suffers both physical and mental severe impairments. Plaintiff does not challenge the administrative law judge's evaluation of the medical evidence relating to her alleged exertional impairments.[1] *Statement of Errors*, pp. 12-16. Rather, plaintiff challenges the administrative law judge's evaluation of the medical evidence relating to her mental impairment. Accordingly, the Court will focus its review of the medical evidence on plaintiff's mental impairment.

Plaintiff's primary care physician, Sudesh S. Reddy, M.D., treated plaintiff from at least September 2001 through February 2008. *Page ID##* 248-69, 354-57. In October 2005, Dr. Reddy prescribed Wellbutrin for complaints of depression, increased stress and "flying off the handle". *Page ID#* 258. Dr. Reddy prescribed Ambien in November 2005 for sleep problems. *Page ID#* 256. Plaintiff continued to complain of nervousness, anxiety and depression throughout early to mid-2006. *Page ID##* 250-54.

Plaintiff first saw psychiatrist Bipin Desai, M.D., on June 9, 2006. *Page ID##* 307-09 (duplicated at *Page ID##* 327-31 and 337-39). Plaintiff reported incidents of sexual abuse and two prior abusive relationships; she claimed that she had battled depression since 1987. *Page ID##* 307-08. She characterized her depression as a 2 or 3 on 1-10 depression scale (where 1=severe depression and

---

[1] Because resolution of the issues presented in this case turn on a single legal issue, the Court will not summarize the testimony presented at the administrative hearing.

10=free of depression). She also reported longstanding difficulty with irritability ("I'm always angry and snappy"), and episodes of racing thoughts, distractability and increased energy. Most days she does not want to be around anybody or do anything. *Page ID#* 307. On clinical examination, Dr. Desai characterized plaintiff's mood as depressed, anxious and irritable and her affect as blunted. *Page ID#* 308. Her thought processes were goal directed; there was no evidence of psychosis. *Id.* Plaintiff was alert and oriented and she had adequate insight and judgment. Plaintiff denied suicidal or homicidal thoughts. *Id.* Dr. Desai diagnosed bipolar disorder, type 2, r/o major depressive disorder, recurrent, r/o bipolar disorder, type 1, and post traumatic stress disorder. *Id.* He assigned a Global Assessment of Functioning ("GAF") score of 52, which is suggestive of moderate dysfunction. Dr. Desai prescribed Cymbalta, continued her on Xanax and Ambien and referred plaintiff for cognitive behavioral therapy. *Id.*

On June 23, 2006, plaintiff reported that she was feeling better, and Dr. Desai noted an improvement in plaintiff's mood and affect. Plaintiff continued to complain of irritability. Dr. Desai prescribed Lamictal in addition to plaintiff's other medications. *Page ID#* 306.

On July 17, 2006, state agency psychologist Melanie Bergsten, Ph.D., reviewed the file and concluded that plaintiff "remain[ed] capable of work activity that does not require strict time constraints or complex instruction." *Page ID#* 287. Dr. Bergsten opined that plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods and to respond appropriately to changes in the work

setting. *Page ID#* 286. In October 2006, state agency psychologist Roy Shapiro, Ph.D., affirmed Dr. Bergsten's assessment. *Page ID#* 312.

At a July 28, 2006 office visit with Dr. Desai, plaintiff was depressed and tearful and admitted to continued difficulty with irritability. *Page ID#* 324. Plaintiff spoke "at length about current stressors." Dr. Desai adjusted plaintiff's medication. *Id.* At her next appointment in August, plaintiff reported feeling better, and Dr. Desai noted an improved mood and affect. *Page ID#* 323.

In November 2006, Dr. Desai saw plaintiff for an emergency appointment at which she complained of depression, excessive sleeping and weight gain. *Page ID#* 319. Her mood was depressed and her affect was blunted. *Id.* Her medications were again adjusted. *Id.* At an office visit later that month, plaintiff reported feeling better, but "by evening she's dragging again." *Page ID#* 318. Dr. Desai increased plaintiff's medication. *Id.*

In December 2006, plaintiff reported difficulties with anxiety and insomnia; Dr. Desai prescribed Vistaril and Ambien. *Page ID#* 316. In an assessment of plaintiff's mental residual functional capacity, Dr. Desai opined that plaintiff's abilities were "poor or none" in all areas. *Page ID#* 333.

In early 2007, Dr. Desai reported that plaintiff's mood varied and that her affect was appropriate. *Page ID##* 347-49. Her medications were again adjusted to help with weight gain and anxiety. At an emergency appointment on May 22, 2007, plaintiff reported that she was "stressed out," was feeling overwhelmed and was having trouble with her son. *Page ID#* 346. Dr. Desai characterized plaintiff's mood as depressed and anxious. *Id.* She was re-prescribed Risperdal. *Id.* In June 2007, plaintiff reported that she was depressed and anxious and having difficulties with her

son. Her medications were again adjusted. *Page ID#* 345-46. In July 2007, she presented to Dr. Desai as depressed, anxious and tearful. *Page ID#* 344. She had been car-jacked a week earlier and was prescribed Xanax by Dr. Reddy. *Page ID##* 344, 354. Dr. Desai continued her on Cymbalta, Seroquel, Lamictal and Xanax. *Page ID#* 344.

Dr. Desai completed another mental capacity assessment on August 23, 2007 in which he reported that plaintiff was depressed, anxious and overwhelmed, had a poor attention span and had difficulty with short term memory. *Page ID##* 335-36. According to Dr. Desai, plaintiff had poor or no useful ability to follow work rules, use judgment, maintain attention and concentration for extended periods of 2 hour segments, respond appropriately to changes in routine setting, maintain regular attendance and be punctual within customary tolerances, deal with the public, relate to co-workers, interact with supervisor(s), function independently without special supervision, work in coordination with or proximity to others without being unduly distracted or distracting, deal with work stresses, complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, understand, remember and carry out job instructions (complex, detailed and simple), socialize, behave in an emotionally stable manner, relate predictably in social situations, manage funds/schedules and leave home on her own. *Id.*

In November 2007, plaintiff reported to Dr. Desai that she was "feeling pretty good." *Page ID#* 343. Dr. Desai found plaintiff's mood mildly anxious and her affect appropriate. *Id.* In February 2008, Dr. Desai reported plaintiff was "doing adequately." *Page ID#* 342. Plaintiff was "feeling good" in April 2008 but required an increase in her medications in June 2008 in light of her father's recent cancer diagnosis. *Page ID##* 340-41.

On October 21, 2008, Dr. Desai opined that plaintiff 's mental work abilities were "poor or none" in three areas: in her ability to deal with the public, in her ability to understand, remember and carry out complex job instructions and in her ability to understand, remember and carry out detailed, but not complex, job instructions. According to Dr. Desai, plaintiff had "fair" abilities in nine areas: judgment, maintain attention and concentration for extended periods of 2 hour segments, work in coordination with or proximity to others without being unduly distracted or distracting, understand, remember and carry out simple job instructions, socialize, behave in an emotionally stable manner, relate predictably in social situations, manage funds/schedules and leave home on her own. Plaintiff was found to have "good" mental work abilities in four areas: in her ability to maintain appearance, to respond appropriately to changes in routine setting, to maintain regular attendance and be punctual within customary tolerances and to function independently without special supervision. He did not rate plaintiff in five areas, but instead simply noted, "don't work." *Page ID##* 352-53.

In December 2008, plaintiff reported "experiencing some difficulties with anxiety and limited symptom attacks." *Page ID#* 373. Dr. Desai noted that plaintiff's mood was mildly anxious, her affect was appropriate and there was "[n]o evidence of any mania or psychosis." *Id.* Dr. Desai increased plaintiff's dosage of Xanax, and directed her to return in two to three months. *Id.*

In his decision, the administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease, degenerative joint disease and affective disorder. However, the administrative law judge found that plaintiff nevertheless has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit for at least 6 hours in an eight-hour day and stand and/or walk for at

least 6 hours in an eight-hour day. She could frequently climb stairs, but is precluded from climbing ladders or scaffolds. She could occasionally balance, stoop, kneel, crouch and crawl and would be limited to simple repetitive tasks. She could maintain concentration and pace sufficient to complete tasks in the time expected. She would be precluded from fast-paced, strict time sensitive or high quota tasks. She could interact with co-workers and supervisors intermittently and could tolerate occasional contact with the general public. *Page ID#* 54. Relying on the testimony of the vocational expert, the administrative law judge found that this residual functional capacity would permit plaintiff to perform a significant number of jobs in the national economy, including such unskilled light jobs as cafeteria attendant and mail clerk, and such unskilled sedentary jobs as order clerk, security monitor and addresser. *Page ID#* 58. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *Page ID##* 50-59.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In her *Statement of Errors*, plaintiff contends that the administrative law judge should have accorded controlling weight to the opinions of Dr. Desai, her treating psychiatrist, in determining plaintiff's residual functional capacity and that, in any event, the administrative law judge failed to give "good reasons" for discounting Dr. Desai's opinions.

To be afforded controlling weight, the opinion of a treating physician must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence in the record. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); 20 C.F.R. § 404.1527(d)(2). In weighing the opinions of the treating physicians, an administrative law judge is required to consider factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). Even where the administrative law judge declines to accord controlling weight to the opinion of a treating physician, the administrative law judge "must still determine how much weight is appropriate. . . ." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th

Cir. 2009). Moreover, an administrative law judge must provide "good reasons" for discounting the opinions of a treating physician, *i.e.,* "reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, at 242, citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

As was more fully discussed *supra*, Dr. Desai opined on two occasions that plaintiff was extremely limited in her ability to perform work related activities from a mental standpoint. *See Page ID##* 333; 335-36. On a third occasion, Dr. Desai provided, without any explanation, a much more optimistic assessment. *Page ID##* 352-53. After correctly describing the legal standards applicable under the treating physician rule, *see* 20 C.F.R. §404.1527(d),(f); SSRs 96-2p, 96-5p, 96-6p and 06-3p, the administrative law judge considered Dr. Desai's assessments as follows:

> As for the opinion evidence, the opinions of Dr. Desai, as provided at Exhibits 12F and 13F, have been considered and are rejected. The opinions do not appear to be consistent with the evidence of record and appear to be primarily based on the claimant's subjective complaints. Further, the opinion of Dr. Desai as provided at Exhibit 15F has also been considered and is given little weight. The opinion is incomplete as he notes that the claimant "does not work" instead of providing an opinion; however, portions of the opinion which were completed would suggest that the claimant would be able to perform some work.

*Page ID#* 56. Instead, the administrative law judge relied on the assessment of the state agency psychologists in formulating plaintiff's residual functional capacity. *Page ID#* 54.

This Court rejects plaintiff's contention that Dr. Desai's assessments are uncontroverted. As the administrative law judge noted, Dr. Desai's extremely restrictive assessments were

inconsistent with those of the state agency psychologists and with his own office notes. Indeed, Dr. Desai's earlier assessments were in many respects inconsistent with his own assessment of October 2008, *Page ID##* 352-53. Because the administrative law judge applied the appropriate factors to Dr. Desai's opinions, and provided good reasons for the weight that he gave those opinions, the administrative law judge did not err as a matter of law in his evaluation of the treating psychiatrist's opinions.

It is therefore **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen(14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers,* 18 *Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

*s/Norah McCann King*
Norah McCann King
United States Magistrate Judge

January 25, 2012